Filed 3/25/24  P. v. Trotter CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B321827 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. GA101707-02 |
| JAMES WESLEY TROTTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael D. Carter, Judge.  Affirmed with instructions.

Stephen M. Vasil, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

In 2018 a jury convicted James Wesley Trotter of the special circumstance murder and robbery of Hye Soon Oh. Trotter waived jury on the People's allegation that he had suffered two prior strikes, and in a bench trial the court found Trotter had been convicted of two counts of robbery two years before the crimes in this case.

Trotter's murder conviction later was overturned based on Senate Bill No. 1437. At resentencing on the robbery count, Trotter asked the court to strike or dismiss one or both of his strike priors under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). The court denied the motion and imposed a third strike sentence. We find no abuse of discretion and affirm the judgment. We remand, however, for correction of a minute order and the abstract of judgment.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The events of August 8, 2017*[1]

Hye Soon Oh, age 67, and her husband of 38 years, James Oh, owned a small clothing store at the Plaza Mexico mall in Lynwood. The Ohs made $500 to $700 a day in cash on weekdays. They took the cash home at the end of the day, when the store closed at 8:00 p.m. The Ohs lived in a condominium complex on Montrose Avenue in Glendale.

---

[1] We take our facts from Trotter's Statement of Facts in his opening brief, the clerk's and reporter's transcripts in his direct appeal, B292874, and our opinion in that appeal, *People v. White et al.* (July 16, 2020, B292874) [nonpub. opn.] (*Trotter I*). We previously granted Trotter's request for judicial notice of those transcripts and of the opinion in his direct appeal.

2

Between 8:30 and 8:45 p.m. on August 8, 2017, Brian Lawton was walking on Montrose Avenue in the area of the condominium complex. The complex had two rows of condominiums divided by a shared driveway. Lawton noticed a red Dodge Challenger engaged in "[s]uspicious behavior." With the headlights and interior lights off, the Challenger pulled up "extremely close" to the rear ends of cars parked diagonally on the street. The passenger side door opened and someone got out. "The car repositioned itself," moving eastbound a few more feet, then backing toward the driveway opening.

The person who'd emerged from the Challenger "hugged the right side of the driveway." An automated gate was closing; the person used his body to block it. It reset and started to open. The person descended the driveway to the condominiums' garages, which were below street level.

Lawton heard "a woman screaming for her life" and then a gunshot. The same person who'd gone down the driveway ran back out the open gate and got into the waiting car. The car sped away.

Meanwhile, Aric Hoffman, who lived in a condominium across the driveway from the Ohs, also heard a loud noise. He walked to a window overlooking the driveway, where he saw a man running with a bag and a gun. The man looked at Hoffman, who saw the man go up the driveway and out the gate.

Lawton called 911. Police arrived and found Oh in her garage, lying face down next to her car. She was declared dead at the hospital later that night. Oh died from a single gunshot wound to her left chest.

Investigation revealed Trotter was the driver of the Dodge Challenger. With him in the Challenger were his girlfriend

Tonaye James and his friend Devon White.  White was the man who went down the driveway and shot Oh.

Surveillance video from Plaza Mexico showed Trotter and James walking by the Ohs' store around 5:20 p.m. on that day, August 8, 2017.  At some point Trotter and James went into the store, then left without trying on any clothes or purchasing anything.  Trotter appeared to be texting on his cell phone.

At 6:45 p.m. Trotter and James were at a nearby store. At 7:25 p.m. they left a Walmart.  Trotter called White twice. By 8:00 p.m. Trotter and White were at Plaza Mexico, where Oh's car was parked.  Video surveillance captured the Challenger following Oh.  Trotter's, White's, and James's cell phones traveled from Lynwood to Compton to La Crescenta and back to Compton on the day Oh was murdered.  (*Trotter I.*)

Police found a .45-caliber shell casing in Oh's garage, and a .45-caliber bullet was found in Oh's body.  Either a Glock or a Versa could have fired that bullet.  Photos and video on Trotter's phone dated July and August 2017 showed him with two Glocks. However, a firearms expert could not verify those guns were real without physically examining them.  (*Trotter I.*)[2]

At trial, the prosecution played for the jury a video recorded shortly before 11:00 p.m. on August 8, 2017.  In it, Trotter is seen amidst $20 and $100 bills.  Trotter says:

---

[2]     In August 2018, about two weeks after the trial in this case ended, a "compact Glock" police had found in February 2018 in the possession of a David Lee Rice "was inputted into" the National Integrated Ballistics Information Network and "there was an immediate hit."  The gun was "a forensic match" for the bullet and shell casing from Oh's murder.

4

"All off the bitch you know.  All off the bitch,
the night just barely started . . . [unintelligible]
. . . My night ain't even started yet.  I ain't
even kicked out yet.  I ain't even did nothing
yet.  This is right now.  It ain't two, three
o'clock in the morning, you know.  All off
the bitch all night."

## 2. *The charges, trial, verdicts, and direct appeal*

The People charged White and Trotter with murder and second degree robbery.[3]  The People alleged the special circumstance that the defendants committed the murder while engaged in the crime of robbery.  The People also charged both defendants with being a felon in possession of a firearm.  The People alleged firearm and gang enhancements.  In addition, the People alleged Trotter had two prior strikes, both for robbery.

On August 15, 2018, a jury convicted both defendants of murder and robbery.  The jury found the special circumstance and the firearm allegations true but the gang allegation not true.  The jury also convicted the defendants on the felon-in-possession counts.  In a bench trial, the court found true the allegations that on March 10, 2015, Trotter had been convicted of two prior strikes—both for robbery—in Case No. TA136329.  The court sentenced Trotter to life without the possibility of parole for the special circumstance murder.  The court also sentenced Trotter to the midterm of three years on the robbery count and the midterm

---

[3]     The People also charged James, but she entered into a plea agreement.  (*Trotter I.*)

5

of two years on the gun count, both stayed.  The court did not impose sentence on the prior convictions it had found true.

Trotter appealed.  On appeal, applying the factors our Supreme Court set forth in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, we concluded the evidence was insufficient to support the special circumstance finding as to Trotter.[4]  Accordingly, we reversed the true finding on the special circumstance allegation as to Trotter and dismissed the allegation.  We directed the trial court to resentence Trotter.  (*Trotter I*.)

3.      ***Resentencing and the* Romero *motion***

Back in the trial court, the court granted Trotter's request for appointment of a mitigation expert, Licensed Clinical Social Worker Raji Shivshanker.  Shivshanker submitted a 24-page report entitled, "Psychosocial History."

Trotter's counsel filed a motion asking the trial court to strike Trotter's strike priors in the interest of justice.  The record on appeal does not contain much information about those prior strikes.  Trotter attached to his motion Shivshanker's report as well as the docket from his earlier robbery case.  The report states the robberies took place "at the Smart Discount store and Arco gasoline."  The docket in the case—TA136329—reflects the date of the crimes was November 28, 2014.  Trotter pleaded no contest to both counts in March 2015 and was convicted of two counts of robbery.  The court sentenced him to the low term

---

[4]      Because we "proceed[ed] directly to the second prong [of the test], whether there [was] sufficient evidence Trotter acted with reckless indifference to human life" (*Trotter I*), we did not discuss whether he was a major participant in the underlying robbery.

6

of two years on both counts, apparently to be served concurrently. The probation officer's report issued in 2018 shows Trotter was paroled on May 30, 2016.

In her report, Shivshanker "detail[ed] Mr. Trotter's multigenerational history of parental loss; his severe chronic health condition (sickle cell disease); psychological and environmental factors influencing his development; and youth related factors making him susceptible to environmental and peer influence."[5] Shivshanker stated Trotter's father, who was "affiliated with Spook Town Compton Crips," was killed in "a gang-related shooting" when Trotter was 10 months old. Trotter's maternal uncles were "also gang affiliated."

Trotter suffered from sickle cell disease and faced many hospitalizations and chronic pain. "[A]t home in his Lynwood neighborhood, [Trotter] was harassed and bullied to-and-from school for his small size and stature." Physical abuse by gang members "became so severe that [Trotter's mother or stepfather] drove [him] to school to avoid beatings."

When Trotter was five, his mother married Tyson Gill. Gill took Trotter fishing and got him involved in sports. Gill also "maintained strict rules at home to keep [Trotter] away from negative influences." But Trotter "distanced himself from his mother and stepfather and left home at 16, where he felt overburdened by rules related to his medical condition."

"Familiar with street life due to his maternal uncles . . . , [Trotter] became gang affiliated in adolescence. He sold drugs and exploited women to make money. Feeling as though he

---

[5] Trotter was 21 at the time of the crimes.

finally belonged, [Trotter] lacked full appreciation of [the] risks and consequences [of] his actions."

The record does not reflect whether the prosecution filed a written opposition to Trotter's *Romero* motion. Appellate counsel sent a letter to the superior court in November 2022, asking for several items, including any opposition the prosecution may have filed to the *Romero* motion. In January 2023 counsel spoke with the supervisor for criminal appeals at the superior court, noting that records may have been moved to the Burbank courthouse when the trial judge moved to that courthouse. While the superior court seems to have found some of the missing records, it appears no written opposition to the *Romero* motion ever was located. The prosecution did appear at the hearing on the motion, however, and opposed it.

The prosecutor told the court Trotter's "conduct [was] horrendous." He added, "His prior history has also been horrendous. In 2014, he was convicted of pimping a 16-year-old girl."[6] The prosecutor noted that, while on probation for that felony, Trotter "committed two armed robberies with a firearm." The prosecutor said Trotter was on parole for the robberies when he committed the offenses against Oh, and he was out on bail in another case.[7]

---

[6] The probation officer's report states Trotter was arrested for human trafficking in violation of Penal Code section 236.1, subdivision (a), and convicted in July 2014 of purchasing a person for purposes of prostitution or placing a person for immoral purposes in a place against her will in violation of Penal Code section 266e.

[7] That pending case was apparently for felony vandalism.

The prosecutor argued the gun police later found was Trotter's and "it was actually his gun that he gave to Mr. White[,] . . . the actual killer."[8] The prosecutor said Trotter "followed this poor woman from work all the way to her home in Glendale; and then afterwards was laughing about it."

Trotter's counsel acknowledged Trotter had "a serious criminal history" but urged he was "a very young man" who had faced "tremendous adversity." Counsel argued Trotter was not somebody who should be "throw[n] away and consign[ed] to a life sentence." Counsel told the court Shivshanker's report showed Trotter's "potential to rehabilitate himself and his potential to grow as a person."

At the conclusion of the lengthy hearing, the court denied Trotter's *Romero* motion. The court praised defense counsel's "very good job of pointing out all of the issues of [Trotter's] background" and of the "medical conditions that he has had to endure throughout his life" with "a very thorough report." The court said it was "looking at the entire picture" and, under the case law, it had to "look at the nature of the circumstances of the defendant's present felony, his prior felonies," his

---

[8] At Trotter's sentencing in September 2018, the prosecutor introduced photographs of Trotter holding a Glock nine days before the murder and of the murder weapon later found in Rice's possession. Comparing the two photographs, the court noted they were "the exact same type of weapon, a compact Glock," with slides, handgrips, and slide releases that "appear[ed] to be the same." The court later stated, "[T]he circumstantial evidence is strong that Mr. Trotter was the one who provided the weapon to Mr. White."

9

"background, character" and "prospects," any eighth amendment issues, and "the interest of society."

The court noted Trotter committed the prior strikes while on probation, and they "were robberies with weapons." The court said Trotter was involved in "serious activities" "at a very young age," and those "robberies with guns" "could have led to tragic endings as did this one." As for the facts of the current crime, the court observed that, in "a sophisticated plan," Trotter drove a vehicle that "left Lynwood and followed the victim home to Glendale, which is some 20 miles or more away," with the plan of robbing her in an area where she was "less defensible instead of robbing [her] at [a] location out in public."

The court then discussed Trotter's statements to Shivshanker, detailed in her report, that he now "understands and appreciates the consequences of gang life" and "regrets his lifestyle choices that prevented him from being with his daughters."[9] The court said, "I don't know whether or not the five years [Trotter] has spent in custody ha[ve] matured him to the point where he is truly going to carry out his statement that he has changed. That's something that only time will tell."

After discussing all these factors, the court concluded Trotter "does fall within the spirit of the Three Strikes law." Accordingly, the court denied his *Romero* motion. The court

---

[9] According to Shivshanker, Trotter became a father at age 20 when he had "a brief relationship" with a woman named Yamise. Trotter also became a stepfather to Yamise's daughter from a prior relationship. The Department of Children and Family Services removed both children from Trotter and Yamise. Trotter's mother now cares for them.

dismissed the murder charge and "any enhancements." The court sentenced Trotter to 25 years to life on the robbery count and to two years on the gun possession charge, to be served concurrently with the life sentence.

## DISCUSSION

### 1. *Governing law*

In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation. (Pen. Code, § 1385, subd. (a); *Romero, supra,* 13 Cal.4th at p. 504.) In determining whether a dismissal is in the "furtherance of justice," the court is required to consider both the constitutional rights of the defendant and the interests of society represented by the People. (*Romero,* at pp. 530–531.) A court's "great power" to dismiss a prior strike conviction "should only be used in 'extraordinary' circumstances, when the ends of justice demand it." (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1105 (*Mayfield*); *People v. Vasquez* (2021) 72 Cal.App.5th 374, 381; *People v. Beasley* (2022) 81 Cal.App.5th 495, 500 (*Beasley*).) "[T]he Three Strikes law establishes a 'strong presumption' in favor of a harsher sentence and requires the court to explicitly articulate its reasoning if it is to depart from a harsher sentence by granting the *Romero* motion." (*People v. Salazar* (2023) 15 Cal.5th 416, 428; *People v. Dain* (2024) 99 Cal.App.5th 399, 414 (*Dain*).)

"[O]f course, the court must remember the Three Strikes law . . . must be applied when the defendant has two or more prior strikes, unless the court concludes an exception to the law should be made because, *for articulable reasons that can withstand scrutiny for abuse*, the defendant lies outside the spirit of the law such that he should be treated as though he had not previously been convicted of one or more strikes." (*Mayfield,*

11

*supra*, 50 Cal.App.5th at p. 1105; *Beasley*, *supra*, 81 Cal.App.5th at p. 500.)

Our Supreme Court has described the factors a trial court must consider when exercising its discretion to dismiss a prior conviction under the Three Strikes sentencing scheme. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.* See *Dain, supra*, 99 Cal.App.5th at pp. 413–414 [*Williams* set " '*stringent* standards that sentencing courts must follow in order to find' a defendant outside the scheme's spirit"].)

We review a court's ruling on a *Romero* motion under the deferential abuse of discretion standard. That is, the defendant must show the sentencing decision was irrational or arbitrary. (*People v. Carmony* (2004) 33 Cal.4th 367, 375–377 (*Carmony*).) It is not enough to show that reasonable people might disagree about whether to strike a prior conviction. (*Id.* at p. 378.) The Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid.* See also *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170 (*Bernal*).)

2.     ***The trial court did not abuse its discretion in denying Trotter's*** Romero ***motion***

Trotter has not carried his burden—as " ' "the [person] attacking the sentence" ' "—" ' "to clearly show" ' " the trial court's denial of his motion was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra,* 33 Cal.4th at pp. 376–377.) The court appointed the mitigation expert Trotter requested, Shivshanker, and the court plainly read and considered her extensive report. Trotter presented no information or evidence about his two prior robberies to show there was some mitigating factor or explanation for either of them. Indeed, the parties seemed to agree Trotter committed those two robberies, of two victims, with a gun. Trotter was on felony probation at the time, and he committed the robbery of Oh less than 15 months after being paroled on his two previous robberies. Trotter's strike priors were neither "remote" nor "followed by a long crime-free period evidencing rehabilitation." (See *Dain, supra,* 99 Cal.App.5th at p. 416 [discussing *Mayfield, supra,* 50 Cal.App.5th at pp. 1107–1108 (defendant failed to reform his behavior between first strike ten years earlier and third strike)]. See also *People v. Brugman* (2021) 62 Cal.App.5th 608, 640 [court denying *Romero* motion may reasonably focus on the fact the prior strike was recently committed].)

Moreover, the facts of Trotter's third strike—the robbery of Oh—were egregious. Trotter and White made a plan to rob the victim of the small amount of cash she took home at night from her mom-and-pop shop. Trotter and his girlfriend cased the place. Trotter and White then followed Oh from her workplace to her home some distance away. Trotter positioned the car so White could go down the driveway to the parking

13

garage, then turned the car around to be ready for the quick getaway that followed. Later that night, Trotter posted video of himself, surrounded by cash, boasting it was "[a]ll off the bitch."[10]

Trotter contends the trial court abused its discretion by relying on its mistaken belief that Trotter supplied White with the murder weapon and that Trotter's "conduct increased the danger to Oh." Trotter quotes from our opinion in *Trotter I*. There, however, the issue before us was whether the evidence at trial established beyond a reasonable doubt that Trotter acted with reckless indifference to human life. In deciding a *Romero* motion there is no such requirement that the court consider only matters that the prosecution has proved beyond a reasonable doubt, as Trotter himself acknowledges.

Moreover, we never said there was no evidence Trotter gave White the murder weapon. We described the inconclusive evidence, including photos and video of Trotter with guns in the months before Oh's death. We then stated, "Even if this evidence raised a reasonable inference that Trotter supplied the murder weapon," his "mere awareness" a gun would be used in the robbery was insufficient to meet *Clark*'s "reckless indifference" standard. (*Trotter I*.)

Similarly, our statement in *Trotter I* that there was no evidence—one way or the other—as to whether Trotter tried to minimize the risk of violence in the commission of the robbery does not support Trotter's contention that the court abused its discretion in noting Trotter and White followed the victim home

---

[10] Nowhere in Trotter's 64 pages of briefing does he even mention this video.

14

to rob her " 'out of public view.' "  That Trotter may have "wanted to minimize the risk of apprehension" (*Trotter I*) is not inconsistent with the fact that Oh was less able to call for help in her underground garage than she would have been had the defendants robbed her at Plaza Mexico or as she walked to her car in the mall's parking lot.

Trotter also asserts the court engaged in impermissible speculation by noting—after Trotter declared he'd never put himself "in a situation like that again"—it was sure Trotter made a similar statement when he got the low term of two years for the two prior robberies.  Trotter complains the court hadn't read the transcript of the sentencing in that earlier case.  However, had Trotter thought that transcript would support his *Romero* motion, he of course could have submitted it to the court.

Finally, the parties agree the court was wrong when it told Trotter he would be eligible for early parole at a youth offender parole hearing.  After the court heard and denied Trotter's *Romero* motion, and after it had sentenced him, the court spoke to Trotter about his future.  The court urged Trotter to "continue [his] program" and "to follow through with all the things" he'd said he would do when released.  The court mentioned a *Franklin* hearing,[11] then told Trotter, "[Y]ou are eligible for a parole hearing as a youthful offender.  It's before the 25 years . . . ."

As the parties note, because he was sentenced under the Three Strikes law, Trotter is not eligible for a youth offender parole hearing.  (See *People v. Delgado* (2022) 78 Cal.App.5th 95, 101.)  The Attorney General argues this error was harmless. We agree.  The trial court set forth—before denying Trotter's

---

[11]     *People v. Franklin* (2016) 63 Cal.4th 261.

15

*Romero* motion—all the reasons for that ruling. It did not mention early parole nor does it appear the court's mistaken belief played any significant role in its ultimate decision.

In sum, the record reflects the trial court carefully considered the relevant circumstances and concluded it was not appropriate to depart from the sentencing norms established by the Three Strikes law. To be sure, Trotter's lifelong struggle with sickle cell disease has been a tremendous physical and emotional challenge. But given all of the factors here that the court considered under *Williams* and other governing case law, the presence of that mitigating evidence is not sufficient to render the court's denial of Trotter's *Romero* motion an abuse of discretion. (See *Bernal, supra,* 42 Cal.App.5th at p. 1170.)

**3.** ***The superior court must correct a minute order and the abstract of judgment***

In our opinion on direct appeal, we directed the trial court "to correct the August 15, 2018 minute order to reflect that the jury found true an allegation under section 12022.53, subdivisions (d) and (e)(1) and not under subdivision (d) alone . . . ." (*Trotter I.*) Trotter notes—and the Attorney General agrees—that on remittitur the trial court failed to follow this direction. We again order this correction. In addition, the Attorney General notes the court awarded Trotter 1,745 actual days of presentence credit at resentencing, but the abstract of judgment does not list any custody credit. We direct the court to amend the abstract of judgment and to forward the amended abstract to the Department of Corrections and Rehabilitation.

## DISPOSITION

We affirm James Wesley Trotter's judgment of conviction. We direct the trial court to (1) correct the August 15, 2018 minute order; and (2) amend the abstract of judgment to reflect the award of actual days of presentence custody credit.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.